462 So.2d 728 (1984)
Santina C. GEORGE
v.
Charles Howard NEVETT and Mary S. Nevett.
83-397.
Supreme Court of Alabama.
October 5, 1984.
Rehearing Denied January 11, 1985.
*729 S.P. Keith, Jr. of Keith, Keith & Keith, Birmingham, for appellant.
Michael L. Chambers, Birmingham, for appellees.
FAULKNER, Justice.
This is an appeal from a fraud and breach of contract action which arose in connection with a real estate sale between plaintiffs, Charles Howard Nevett and Mary S. Nevett, and defendant, Santina C. George. The jury rendered a verdict in favor of the plaintiffs and against the defendant in the sum of $95,000.00. After a motion for new trial was denied, defendant appealed.
On December 14, 1981, the parties entered into a real estate contract whereby the Nevetts agreed to buy George's home in Fairfield, Alabama, for $210,000.00. The contract provided that the Nevetts were to pay $5,000.00 earnest money on January 15, 1982, and principal of $70,000.00 cash upon closing the sale. Mrs. George agreed to hold a purchase money mortgage for the balance, $135,000.00, payable over a ten-year period.
Additionally, the contract provided that the seller was to convey the property free of all encumbrances not excepted in the contract. The parties agreed that any encumbrances not excepted in the contract, or assumed by the purchasers, could be cleared at the time of closing from the sale proceeds. The contract also stated:
"The Seller warrants that there is no unpaid indebtedness on the subject property except as described in this contract. These warranties shall survive the delivery of the above deed."
The only unpaid indebtedness listed in the contract was a mortgage to Birmingham Federal Savings and Loan Association, which the seller agreed to pay from the proceeds at closing.
The deed which was delivered to the Nevetts at closing states that the property was conveyed free from all encumbrances except those set out in the instrument. According to the deed, the conveyance was subject only to 1982 taxes, easements, mineral rights, and the $135,000.00 purchase money mortgage held by George.
At the closing of the sale there was evidence that Birmingham Trust National Bank (BTNB) held a $25,000.00 mortgage on the property. Apparently, the title insurance company held the $25,000.00 in escrow pending the outcome of a dispute between George and BTNB. The seller did not reveal the existence of this encumbrance prior to closing, nor was it indicated in the contract or the deed. The Nevetts, however, signed a closing statement which stated that $25,000.00 was to be withheld from the balance due the seller for "Escrow for BTNB mortgage." The title binder, which was delivered to the Nevetts, also showed the BTNB mortgage and indicated that it was recorded in the Bessemer Division of the probate office of Jefferson County, Alabama.
Mr. Nevett claims that he did not discover the mortgage to BTNB until approximately two months after the closing, when he attempted to obtain a loan from Finance America Corporation, borrowing against the equity in the home he had just purchased. Nevett needed the loan in order to make the first two payments on the purchase money mortgage held by George. Finance America declined Nevett's application for the loan because of BTNB's outstanding mortgage.
The Nevetts failed to make any payments to Mrs. George under her mortgage. *730 On October 18, 1982, a foreclosure deed was executed conveying title to the property back to George. The BTNB mortgage was finally released by satisfaction of mortgage on April 25, 1983, and the encumbrance was removed from the title.
The Nevetts' complaint was based on breach of contract and fraud. The jury returned a general verdict for $95,000.00. The trial court denied the defendant's motions for a judgment notwithstanding the verdict or in the alternative for a new trial.
On appeal, George argues that the trial court made numerous errors regarding the admission of evidence and that the evidence adduced was insufficient to sustain the jury verdict. We disagree.
Although many of the facts in this case were in dispute, it is the function of the jury, which is authorized to draw all reasonable inferences from the evidence, to resolve controverted factual inferences. Fleming v. Kirkpatrick, 371 So.2d 16 (Ala. 1979).
Clearly, in this case, the jury could reasonably conclude that the Nevetts were entitled to a judgment for breach of contract. It is undisputed that the parties entered into a contract in which George warranted that the property was free of all encumbrances not set out in the contract. The mortgage to BTNB was an encumbrance not described in the contract and not satisfied at the time of closing.
Considering all the evidence, the jury also could reasonably have concluded that George was liable for intentional fraud. Fraud by misrepresentation of a material fact is defined in Alabama Code 1975, § 6-5-101:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
In order to make out a prima facie case of fraud, the plaintiff must prove: (1) that the defendant made a false representation concerning an existing material fact; (2) that the plaintiff was deceived by the misrepresentation and that he relied on it; (3) that his reliance was justified under the circumstances, and; (4) that as a proximate result of the misrepresentation, the plaintiff suffered damages. See Mahoney v. Forsman, 437 So.2d 1030 (Ala.1983); Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala.1981).
In this case George represented that there were no outstanding mortgages other than the first mortgage to Birmingham Federal. George knew of the BTNB mortgage, yet failed to disclose it in the sales contract or in the deed. Based upon the evidence presented, the jury could reasonably have concluded that the Nevetts were deceived by the misrepresentation and that they justifiably relied on it in purchasing the property.
The jury apparently resolved the factual dispute of whether the misrepresentation was intentional in favor of the Nevetts, and we will not disturb that finding. Although arguably the Nevetts had notice of the BTNB mortgage, since it was indicated on the closing statement and on the title binder, the intentional misrepresentation occurred at the time of closing, when the encumbrance was not cleared in accordance with the contractual provisions. Furthermore, the BTNB mortgage was not satisfied until approximately one year after the closing.
The jury returned a verdict of $95,000.00 in favor of the Nevetts. The general verdict was returned without specifying upon which theory liability was imposed.
According to Mr. Nevett, he sustained a total of $89,477.01 in damages, as follows: (a) $67,888.97 actual cash paid to George as a result of the sale; (b) $8,300.00 real estate commission which Mr. Nevett agreed to undertake, of which only $3,800.00 had been paid at date of trial; and (c) $13,288.04 interest paid by Nevett on money borrowed to make the original payments to George. It appears that the balance was based upon a punitive damages award.
*731 In Big Three Motors, Inc. v. Smith, 412 So.2d 1222 (Ala.1982), this Court quoted with approval from 22 Am.Jur.2d Damages § 249 (1965):
"`Exemplary damages, if recoverable at all, may be recovered only in cases where the wrongful act complained of is characterized by, or partakes of, some circumstances of aggravation, such as wilfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, indignity and contumely, insult, or fraud or gross fraud....
"`One or more of the conditions under which exemplary damages are recoverable is sufficient.'" (Emphasis added in Big Three Motors, Inc.)
In the instant case, the evidence indicates that George made the representation with knowledge of its falsity. George represented that the conveyance was free from an encumbrance, when, in fact, she knew the property was encumbered by a prior mortgage. There is also evidence from which the jury could reasonably have inferred that George or her closing attorney knew or intended that the Nevetts would be injured thereby. Although the closing attorney testified that he informed all parties of the BTNB mortgage, he nevertheless failed to inform the Nevetts that the mortgage in escrow would encumber their title or that they would be unable to secure a loan on the property.
This court has often noted the following principles:
"There is a very strong presumption in this state in favor of upholding jury verdicts on appeal. Wagner v. Winn-Dixie, 399 So.2d 295 (Ala.1981); Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala.1979). A denial of a motion for a new trial strengthens the presumption of correctness of the jury's verdict. Shiver v. Waites, 408 So.2d 502 (Ala.1981); Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala.1981). This court must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw. Cooper v. Peturis, 384 So.2d 1087 (Ala.1980); Wiggins v. McLeod, 371 So.2d 660 (Ala.1979). The reviewing court will not reverse a judgment based on a jury verdict unless the evidence is so preponderant against the verdict as to clearly indicate that it was wrong and unjust. Cecil-Crews Chevrolet-Oldsmobile, Inc. v. Williams, supra."

Mahoney v. Forsman, 437 So.2d 1030, 1033 (Ala.1983).
In light of the above discussion, we find that the jury verdict is neither contrary to the preponderance of the evidence nor palpably wrong or manifestly unjust. The judgment of the trial court is therefore affirmed.
AFFIRMED.
JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
The majority opinion seems to convey the impression that the outstanding BTNB mortgage was not disclosed to the Nevetts either at the time of the contract or at the time of closing. It is clear, however, that the mortgage was disclosed at the time of closing, because the closing statement and the title binder both included reference to that mortgage.
The majority also indicates that the fraud was in failing to list the BTNB mortgage on the deed. As a general proposition, failing to note an outstanding mortgage on the deed indicates that the seller intends to pay off that mortgage out of the proceeds of the sale. I would affirm on the basis that the jury was authorized to find under the evidence that fraud occurred at closing when Mrs. George represented in the closing statement that $25,000 was to be held in escrow to pay off the mortgage if the jury found that, in fact, she had no intention of releasing that money to pay off the mortgage.